### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**JOSEPH WESSENDARP**

       **Plaintiff**

    **v.**                        **Case No.  1:12-cv-559-HJW**

**MICHELLE BERLING, et al.,**

        **Defendants**

### ORDER

      Two motions to dismiss are pending: 1) the "Motion to Dismiss" (doc. no. 9) by West Chester Police Officer Michelle Berling, West Chester Police Sgt. Herb Hood, and West Chester Township (the "West Chester defendants"); and 2) the "Motion to Dismiss" (doc. no. 15) by Beckett Ridge Golf Club, LLC, and Kier McEachern (the "Beckett defendants"). Plaintiff opposes both motions. Having fully considered the record, including the pleadings and the parties' briefs, the Court will <u>grant</u> the motions (except as to the untimeliness argument) for the following reasons:

### I.  Background and Factual Allegations

      In his complaint, attorney Joseph Wessendarp ("plaintiff") asserts six claims under state and federal law. He sues five defendants: a privately-owned golf club, a female employee who operated a beverage cart at the golf club, two police officers (in their individual and official capacities), and the township that employed the officers.

Plaintiff alleges he purchased a life membership in the Beckett Ridge Golf Club LLC ("Beckett") in 1985 (doc. no. 1, ¶ 1). He does not attach a copy of any purchase contract. The next alleged event occurred 25 years later. Plaintiff alleges that, after playing golf at the club on July 21, 2010, Kier McEachern, the female operator of a beverage cart, attempted to engage him in conversation (¶ 2). After exchanging pleasantries, he walked away. According to plaintiff, McEachern made unwelcome "personal and sexual remarks" and followed him into the cart barn. He claims that when he stopped, she negligently bumped into his golf bag. Plaintiff alleges that his head jerked back and that he felt "a sharp shooting pain" in his neck and shoulder (¶ 4).

According to plaintiff, he told McEachern that he "wished to talk for ten minutes," and they went into a dark unused office (¶¶ 6-7). He alleges he "allowed her" to go in first. He alleges that McEachern "tried to sit on his lap" but that he told her to "sit in that chair" instead (¶ 10). He claims he told her she needed to "stop" and that when he tried to close the door, she stepped outside. He indicates he "motioned and said to go back in so they could talk for ten minutes" (¶ 11), but McEachern said she did not want to "talk" with him and walked away (¶ 13). He asked her again "so you really don't want to talk to me" and she replied "No" (¶ 13). Plaintiff alleges he then went home (¶ 14).

Plaintiff indicates that the police attempted to contact him about the incident. Officer Berling left him a telephone message on July 23, 2010, advising that she wished to speak with him about the incident and that plaintiff was "trespassed" from Beckett (¶ 15). On July 25, 2010, plaintiff went to the police

department at 7 a.m. (¶ 17). West Chester Police Sgt. Herb Hood spoke with plaintiff and, according to plaintiff, told him "never to play golf at Beckett" (¶ 19). When plaintiff insisted that he had a "life membership," Sgt. Hood allegedly told plaintiff that he would be jailed if he went there.

That same day, plaintiff went to the golf club and spoke with Kevin Dietsch, Beckett's general manager, about the July 21, 2010 incident (¶ 20). Dietsch asked him for a written statement, which plaintiff later provided (¶¶ 21, 23). According to plaintiff, Dietsch told him the police had ordered him "not to permit plaintiff to play golf at Beckett" (¶ 22). On July 26, 2010, plaintiff spoke with Officer Berling by telephone, but as the investigation was ongoing, she would not answer questions about about "what was alleged" (¶¶ 24-25). Plaintiff insisted that "his rights as a member could not be taken away by police" (¶ 26). Officer Berling spoke with plaintiff again on August 18, 2010 to ask if he would submit to a polygraph test regarding his version of the July 21, 2010 incident (¶ 27).

Although the complaint does not mention plaintiff's other lawsuits against the golf club, Beckett asks the Court to take judicial notice of the fact that plaintiff has previously sued the golf club and its past and current corporate owners for alleged breach of contract and violation of OCSPA with respect to his alleged "life membership" (doc. no. 19, Exs. A, B Complaints). Plaintiff agreed to voluntarily dismiss the first lawsuit in 2008 after he was served with discovery, but subsequently refiled the case. The Court of Common Pleas for Butler County, Ohio, dismissed the second lawsuit with prejudice on August 27, 2010, pursuant to the parties' "Stipulation of Dismissal" (Ex. C). A court "must take judicial

notice if a party requests it and the court is supplied with the necessary information." Fed.R.Evid. 201(c)(2); <u>Rodic v. Thistledown Racing Club, Inc.</u>, 615 F.2d 736, 738 (6th Cir. 1980) ("federal courts may take judicial notice of proceedings in other courts of record") cert. denied, 449 U.S. 996 (1980); <u>Lyons v. Stovall</u>, 188 F.3d 327, 333 n. 3 (6th Cir. 1999), cert. denied, 530 U.S. 1203 (2000) (same). The Court will take judicial notice of these court documents.

The following year, on March 24, 2011, plaintiff played golf at Beckett, which had a new general manager (Chad Barnhorst). The next day, Officer Berling telephoned plaintiff, said she was aware he had played golf at Beckett, reminded him that he was not allowed on the property, and told plaintiff he "would be jailed if he did so" (¶ 29).

On July 23, 2012, plaintiff filed the present federal complaint. In its introductory paragraph, plaintiff indicates that he bases this action on 42 U.S.C. §§ 1983, 1985(3), 1986, 1988, and the Fourteenth Amendment to the United States Constitution (doc. no. 1 at 2, ¶ 1). He also asserts claims under Ohio law and the Ohio Constitution. Plaintiff recites that jurisdiction in this case is based on 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3)(4) (civil rights and elective franchise). This case does not concern the "right to vote," and plaintiff does not explain how § 1343(a)(4) would relate to this case. Plaintiff seeks compensatory and punitive damages, attorneys fees, costs, unspecified "declaratory and injunctive relief and specific enforcement of plaintiff's rights," and any other "appropriate relief" (doc. no. 1 at 10).

The "West Chester" and "Beckett" defendants have filed separate motions to dismiss pursuant to Rule 12(b)(6). Plaintiff has responded (doc. no. 13, 18), and the defendants have replied (doc. no. 17, 19). The motions are fully briefed and ripe for consideration.

## II.  Standard of Review

Motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted test the sufficiency of a complaint, and the first step is to identify any conclusory allegations. <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1950 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id</u>. at 1949 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. Although the court must accept well pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

In considering a Rule 12(b)(6) motion, the court must focus on whether plaintiff is entitled to offer evidence to support his claims, rather than whether he will ultimately prevail. <u>Id</u>. A complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." <u>Lewis v. ACB Business Serv., Inc.</u>, 135 F.3d 389, 406 (6th Cir. 1998).

### III.  Discussion

#### A.  Claims Three and Six

Initially, the Court observes that plaintiff concedes that several claims should be dismissed. In Claim Three, plaintiff alleges that the defendants violated his "property rights set out in Article § 1.01" and his "freedom of speech under Article § 1.11" of the Ohio Constitution (doc. no. 1 at 8, ¶¶ 1-3). The defendants correctly point out that plaintiff may not assert a private right of action for alleged violation of the Ohio Constitution (doc. nos. 9 at 11-13; 15 at 9). In response, plaintiff concedes that the defendants are "correct concerning the Ohio Constitutional claims" (doc. no. 18 at 6).

In Claim Six, plaintiff alleges that McEachern "harassed" him and that Beckett did not stop the "outrageous harassment" (doc. no. 1 at 9-10, ¶¶ 1-4). The Beckett defendants point out that there is no such cause of action under Ohio law (doc. no. 15 at 5). In response, plaintiff acknowledges that "Ohio does not recognize an independent tort of Outrageous Harassment" (doc. no. 18 at 6). Plaintiff concedes that, as alleged (i.e., a golf club patron alleging "harassment" by a beverage cart operator), he has not asserted a viable cause of action.

In short, plaintiff acknowledges that Claims Three and Six fail to assert cognizable causes of action. The Court will therefore dismiss them.

#### B. Claim Four

In Claim Four, plaintiff alleges "breach of contract" and/or "violation of OCSPA" by Beckett with respect to plaintiff's alleged "life membership" in the golf club. The Beckett defendants point out that plaintiff has already twice sued

Beckett (and its past and current owners) over the terms and existence of his life membership. Specifically, plaintiff alleged that Beckett (and its corporate owners) "have and continue to breach and fail to perform the life membership and other agreements" with plaintiff (doc. no. 19-2 at 4, ¶ 9). On August 27, 2010, the state court *dismissed that lawsuit with prejudice*, including plaintiff's claim against Beckett for "breach of contract and violation of OCSPA." Plaintiff does not dispute this, and the Court may properly take judicial notice of such dismissal.[1]

The "Stipulation of Dismissal" indicates that plaintiff expressly agreed to dismissal with prejudice of "all matters asserted by or against any and all parties" in that second lawsuit. "Generally, a consent judgment operates as res judicata to the same extent as a judgment on the merits." <u>Carroll v. City of Cleveland</u>, 2013 WL 1395900, *4 (6th Cir. (Ohio)) (quoting <u>Horne v. Woolever</u>, 170 Ohio St. 178, 182 (1959), cert. denied, 362 U.S. 951 (1960)). Beckett points out that the plaintiff's present allegations in Claim Four arose *prior* to the August 27, 2010 dismissal.[2] Beckett asserts that plaintiff's present claim for breach of contract and/or for violation of OCSPA is therefore precluded by the prior dismissal with prejudice (doc. no. 19 at 5, 11-15). Beckett points out that Claim Four has already been (or

---

[1] A fact is properly subject to judicial notice when it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2); <u>Holler v. Hartford Life & Accident Ins.</u>, 737 F. Supp. 2d 883, 893 n.1 (S.D. Ohio 2010) (taking judicial notice of court orders).

[2] The incident at the club occurred on July 21, 2010, and according to plaintiff, the police spoke with him on July 25-26 and August 18, 2010 (and told him he was "trespassed" and to stay away from the golf club). Although plaintiff refers to an additional phone call with police in March 2011, it is readily apparent from the complaint that the officer was continuing to enforce the prior exclusion of plaintiff from the golf club premises as "trespass."

could have been) litigated in the prior state action and is barred from consideration on the merits here.

Federal courts give a state judgment the same preclusive effect that it would have in state courts. Carroll, 2013 WL 1395900 at *3 (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)); Ohio ex rel. Boggs v. City of Cleveland, 655 F.3d 516, 519 (6th Cir. 2011). In Ohio, claim preclusion makes "an existing final judgment or decree between the parties to litigation ... conclusive as to all claims which were or might have been litigated in a first lawsuit," Natl. Amusements, Inc. v. City of Springdale, 53 Ohio St.3d 60, 62 (1990), cert. denied, 498 U.S. 1120 (1991); Grava v. Parkman Twp., 73 Ohio St.3d 379, 381-382 (1995). Similarly, issue preclusion (collateral estoppel) precludes relitigation of an issue that has been "actually and necessarily litigated and determined in a prior action." State v. Pettway, 2013 WL 3155232, ¶10 (Ohio App. 8 Dist.) (quoting Krahn v. Kinney, 43 Ohio St.3d 103, 107 (1989). Beckett asserts that plaintiff is bound by his prior "Stipulation of Dismissal" and cannot relitigate Claim Four here. Of course, based on whatever rights plaintiff may still have under Ohio law in his alleged life membership, he may return to state court to enforce the terms of that prior consent judgment.

Rather tellingly, plaintiff offers no argument regarding preclusion and completely ignores the fact that his prior breach of contract/OCSPA claim was dismissed with prejudice. In his response, plaintiff concentrates only on the timeliness issue and the § 1983 claims. Given the prior state court dismissal and

given plaintiff's failure to even address the preclusion argument, plaintiff has apparently waived and/or abandoned Claim Four.[3]

### C. Alleged Untimeliness of Remaining Claims

Next, the Beckett defendants argue that Claims One and Two (construed under § 1983), Claim Four (OCSPA and/or breach of contract), and Claim Five (negligent personal injury), are all time-barred (doc. no. 15 at 4-5, 12). As discussed below, this argument lacks merit.

Section 1983 does not contain a statute of limitations, and thus, federal courts apply the relevant state personal injury statute of limitations. Wallace v. Kato, 549 U.S. 384, 387 (2007). In Ohio, the relevant statute is the two-year statute of limitations in Ohio R.C. § 2305.10. Browning v. Pendleton, 869 F.2d 989, 990 (6th Cir. 1989). The Beckett defendants argue that plaintiff's § 1983 claims were filed beyond the two-year statutes of limitations and are time-barred. They also argue that Claims Four and Five are subject to a two-year statute of limitations and are time-barred.[4] The golf club incident occurred on July 21, 2010, and the defendants contend that plaintiff therefore had to file his complaint by July 21, 2012, but that he did not do so until July 23, 2012.

Plaintiff responds that the last day of the applicable two-year period fell on a Saturday, and thus, he could timely file on the next filing day, Monday, July 23,

---

[3] Even supposing that Claim Four were not precluded by the prior state court dismissal with prejudice, this Court would decline supplemental jurisdiction over such claim because all the federal claims are being dismissed.

[4] OCSPA provides: "An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit." Ohio R.C. § 1345.10(C).

2012. See Fed.R.Civ.P. 6(a)()(1)(C) ("if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). A simple check of the calendar confirms this. The Beckett defendants' "untimeliness" argument under the two-year statute of limitations provides no basis to dismiss these claims.

In reply, the Beckett defendants suggest that Claim Five ("negligent injury") may be construed as a claim of "intentional assault" (doc. no. 19 at 2-4). If so construed, a one-year statute of limitations would apply, see Ohio R.C. § 2305.111, and the claim would be time-barred. The Beckett defendants cite <u>Love v. City of Port Clinton</u>, 37 Ohio St.3d 98, 99 (1988) in support. The <u>Love</u> case involved intentional conduct by police officers in hand-cuffing an arrestee, whereas the present case involves only the allegation that McEachern "negligently bumped" into the plaintiff's golf bag, thereby injuring plaintiff's neck. As plaintiff does not allege that McEachern intended to bump into his golf bag, this claim cannot fairly be read as an "assault or battery." The complaint alleges "negligent" conduct as a basis for plaintiff's alleged injury. The two-year period of limitations applies to Claim Five, and such claim is not time-barred.

### D. Claims One and Two are Construed Under § 1983

The complaint initially recites in its jurisdictional paragraph that plaintiff is bringing this case under a variety of federal statutes, but mentions no statute in Claims One and Two. In Claim One, plaintiff alleges that the "West Chester defendants" violated his "freedom from unlawful interference by police" and violated his "property rights in his life membership" at Beckett. He alleges that

the private golf club acted under "color of law" (doc. no. 1 at 7, ¶ 33). In his response, plaintiff explains that he is alleging a § 1983 claim for deprivation of what he describes as a "constitutionally protected liberty and property interest" (doc. no. 18 at 4). In Claim Two, plaintiff again identifies no statute, but alleges that the Township "failed to train" its police officers "in the proper use of the police powers. . . [and] in the applicable provisions of the Ohio penal law, the Ohio Constitution, and the United States Constitution's Bill of Rights" (doc. no. 1 at 7-8, ¶¶ 1-8). Claims One and Two will therefore be analyzed under § 1983.

Before turning to analysis under § 1983, the Court notes that the complaint initially recites that this action is also based on "sections 1985(3), 1986, and 1988" (doc. no. 1 at ¶ 1). Plaintiff makes no further mention of these statutes anywhere else in the complaint, and the facts alleged in the complaint do not support a claim under these statutes. Section 1985(3) is directed at conspiracies to deprive persons or classes of persons of federally protected rights based on some protected class, such as race, gender, or religion. To state a claim under § 1985(3), plaintiff must allege: 1) a conspiracy; 2) for the purpose of depriving any person or class of persons of the equal protection of the laws; and 3) an act in furtherance of the conspiracy; 4) which deprives the individual of any right. <u>Radvansky v. City of Olmsted Falls</u>, 395 F.3d 291, 314 (6th Cir. 2005).

The present complaint contains no facts or allegations about any "conspiracy" or "class-based animus" of any kind. See <u>Pahssen v. Merrill Cmty. Sch. Dist.</u>, 668 F.3d 356, 367–68 (6th Cir. 2012), cert. denied, 133 S.Ct. 282 (2012) ("the complaint thus must allege both a conspiracy and some class-based

discriminatory animus behind the conspirators' action"). Absent any allegation of an agreement among the defendants, the complaint fails to state a § 1985 claim. Farat v. Jopke, 370 F.3d 580, 599 (6th Cir. 2004) (vague conclusory allegations are insufficient to state a § 1985 claim); Kensu v. Haigh, 87 F.3d 172, 175 76 (6th Cir. 1996) (same, dismissing § 1985 claim). Defendants point out that plaintiff has not responded to their motion to dismiss any such claim (doc. no. 19 at 10, fn. 3).

Absent a plausible § 1985 claim, any derivative claim under § 1986 for "neglecting to prevent conspiracy to interfere with civil rights" is also subject to dismissal for failure to state a claim. Haverstick Ents., Inc. v. Fincl. Fed. Credit, Inc., 32 F.3d 989 (6th Cir. 1994) (where plaintiff failed to state a viable § 1985 claim, the dependent § 1986 claim was also properly dismissed); Cousino v. Nowicki, 1998 WL 708700, *1-2 (6th Cir. (Mich.)), cert. denied, 526 U.S. 1008 (1999) (same).[5] As for plaintiff's reference to § 1988, such statute concerns attorney fees and provides no cause of action.

### E. Whether Claims One and Two State a Claim for Relief Under § 1983

Section 1983 provides a federal cause of action for civil damages against a person acting "under color of state law" who deprives another of "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In considering whether a complaint states a § 1983 claim for purposes of Rule 12(b)(6), courts inquire: (1) whether the conduct complained of was committed by

---

[5] Any § 1986 claim would be time-barred because it is based on alleged events in 2010 and early 2011. See 42 U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued"). Plaintiff's complaint was filed over one year later on July 23, 2012.

a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981); Ziegler v. Aukerman, 512 F.3d 777, 781 (6th Cir. 2008). Given the complaint's initial reference to the Fourteenth Amendment, the alleged right at issue appears to be the constitutional guarantee that "no State . . . shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1.

### 1. Claim One: *Against Beckett*

To the extent plaintiff is attempting to assert a § 1983 claim against the private golf club, the allegations of the complaint, even when taken as true for purposes of Rule 12(b)(6), do not state a claim against Beckett. The sum total of plaintiff's factual allegations against Beckett are: 1) that its beverage cart operator "harassed" him and bumped into his golf bag; 2) that plaintiff met with the club's general manager (Dietsch), who asked plaintiff to supply a written statement about the incident and indicated that the police had told him "not to permit plaintiff to play golf at Beckett" (¶¶ 21-22); and 3) that the following year on March 24, 2011, the club's new general manager (Barnhorst) "checked in plaintiff to play that day and issued plaintiff his receipt ticket" (¶ 29). These allegations state no plausible claim for relief under § 1983.

Although plaintiff alleges that the privately-owned golf club acted "under color of law" (¶ 33), this allegation is entirely conclusory. Beckett emphasizes that it is not a "state actor" (doc. no. 15 at 6; 19 at 9). The United States Supreme Court has repeatedly explained that "the Fourteenth Amendment, which prohibits

the states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." Rendell–Baker v. Kohn, 457 U.S. 830, 837 (1982); Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999); Paige v. Coyner, 614 F.3d 273, 278 (6th Cir. 2010). The purpose of § 1983 is to provide a remedy to individuals who have been deprived of rights by a governmental entity. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) ("A plaintiff may not proceed under § 1983 against a private party."); Krukemyer v. Forcum, 475 Fed.Appx. 563, 566 (6th Cir. (Ohio)) ("a due process claim lies only against a governmental defendant").

"State action requires both an alleged constitutional deprivation caused by acts taken pursuant to state law and that the allegedly unconstitutional conduct be fairly attributable to the State." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 41 (1999).The Supreme Court has explained that "the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.' " Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 936-37 (1982) (quoting Flagg Brothers, 436 U.S. at 156). The Supreme Court has long recognized "the essential dichotomy set forth in [the Fourteenth] Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct . . . against which the Fourteenth Amendment offers no shield." Jackson v. Metr. Edison Co., 419 U.S. 345, 349 (1974); see also, Brentwood Acad. v. Tenn. Sec. School Athl. Assn., 531 U.S. 288, 295 (2001) ("Our cases try to plot a line between state action subject

to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not.").

Even taking the allegations of the complaint as true for purposes of Rule 12(b)(6), neither the golf club, nor its employees, were "state actors." Although Beckett employees, such as McEachern and Dietsch, may have spoken with police during the investigation of the July 2010 incident, this does not make them "state actors." Beckett correctly points out that "the law permits private individuals and entities to discuss criminal investigations with the police without fear of liability under Section 1983" (doc. no. 19 at 9). See <u>Moldowan v. City of Warren</u>, 578 F.3d 351, 399 (6th Cir. 2009), rehrg. and rehrg. en banc denied (2009) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under §§ 1983 or 1985.").

To the extent plaintiff attempts to attribute the golf club's actions to the West Chester defendants, a private entity's conduct can be attributable to the state only if one of the following exceptions is met: (1) the public function test; (2) the state-compulsion test; or (3) the nexus or symbiotic-relationship test. <u>Chapman v. Higbee Co</u>., 319 F.3d 825, 833 (6th Cir. 2003) (en banc), cert. denied, 542 U.S. 945 (2004); <u>Tahfs</u> 316 F.3d at 590-91. Although plaintiff asserts that there was a "symbiotic" relationship between Beckett and the police (Complaint, ¶ 33), this allegation is entirely conclusory. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555. To survive Rule 12(b)(6), a complaint must provide "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Plaintiff has not alleged facts showing "a sufficiently close relationship between the state and the private actor so that the action taken may be attributed to the state." Tahfs 316 F.3d at 591. Plaintiff has not argued that any other exception applies.[6] Under the facts alleged in the complaint, the Beckett defendants are not state actors and cannot be held liable under the Fourteenth Amendment. Jackson v. Metr. Edison Co., 419 U.S. 345, 349 (1974) ("[P]rivate conduct . . . falls outside the scope of the Fourteenth Amendment"). Even if defendants were state actors, plaintiff's § 1983 claim would still fail because the Beckett defendants did not deprive him of any federally protected right.

In his response, plaintiff argues that "Beckett's General Manager, relying on instructions from West Chester Township Police, prohibited Wessendarp from playing golf at Beckett" (doc. no. 18 at 2). Under the facts alleged in the complaint, Beckett did nothing but exclude plaintiff from its premises and cooperate with police in their investigation of potentially criminal conduct involving plaintiff. The complaint alleges no actions by the Beckett defendants that would make them "state actors" for purposes of § 1983. See Moldowan, 578 F.3d at 399 ("Moldowan cannot maintain an action under § 1983 against Fournier because she is not a "state actor" and did not act "under color of law"); and see,

---

[6] To the extent plaintiff alleges that Dietsch told him the police had "ordered" him not to let plaintiff to play golf at Beckett, more than mere acquiescence is necessary to satisfy the "state compulsion" exception. Campbell v. PMI Food Equip. Group, Inc., 509 F.3d 776, 784 (6th Cir. 2007) (citing Wolotsky v. Huhn, 960 F.2d 1331, 1335 (6th Cir. 1992)). Such exception usually applies in the context of state regulation, which is not relevant here.

e.g., <u>Ruff-El v. Nicholas Fin. Inc.</u>, 2012 WL 252134, *3 (S.D.Ohio) (granting Rule 12(b)(6) motion to dismiss because private entity was not a "state actor"); <u>Smith v. Laufman, Jenson & Napolitano, LLC</u>, 2012 WL 1808851, *3 (S.D.Ohio) (same).

Even assuming that the golf club "excluded" plaintiff from its premises, Beckett possessed the right to exclude persons from its own private property. "A private landowner is the sole possessor of private property," unlike public property which "is owned by the taxpayers and is accessible to all." <u>Ohioans for Conc. Carry, Inc. v. Clyde</u>, 120 Ohio St.3d 96, 104, ¶ 47 (2008) (emphasizing the distinction between public and private property). Although the golf course was open to the public, "private property does not lose its private nature because it is open to the public." <u>Id</u>. (citing <u>PruneYard Shopping Ctr. v. Robins</u> 447 U.S. 74, 81 (1980)). A private owner has the right to exclude an individual from its private property even when open to the public. <u>Bresnik v. Beulah Park Ltd. Partnership, Inc.</u>, 67 Ohio St.3d 302, 303-04 (1993). The Ohio Supreme Court has explained that "the common-law right to exclude has long been a fundamental tenet of real property law" and that proprietors of private enterprises, including recreational facilities, possess this right." <u>Id</u>. (citing <u>Loretto v. Tel. Manhattan CATV Corp</u>., 458 U.S. 419, 435 (1982) ("The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights.")); <u>Eastwood Mall, Inc. v. Slanco</u>, 68 Ohio St.3d 221, 223 (1994), cert. denied, 513 U.S. 933 (1994). To the extent plaintiff complains that Beckett "excluded" him from its premises, the complaint states no claim against Beckett under § 1983.

Several cases cited by plaintiff are inapposite because they involved exclusion from public places. See, e.g., <u>Kennedy v. City of Cincinnati</u>, 595 F.3d 327 (6th Cir.), cert. denied, 131 S.Ct. 110 (2010) (finding that individual had a protected liberty interest in not being excluded by police from the city's public recreational facilities, absent any violation of rules or law); <u>Mertik v. Blalock</u>, 983 F.2d 1353 (6th Cir. 1993) (same, exclusion from use of municipal skating rink based on alleged sexual misconduct). While a person's right to remain in a public place is a liberty interest protected by the Fourteenth Amendment, see <u>City of Chicago v. Morales</u>, 527 U.S. 41, 54 (1999), the cases cited by plaintiff do not establish that he had a federally protected "liberty interest" in playing golf at a private golf club.[7]

The additional cases cited by plaintiff are "takings" cases. The complaint does not mention the Takings Clause of the Fifth Amendment, and such cases have no discernible relevance to the plaintiff's claim against the private golf club. The alleged impairment of plaintiff's ability to use his "life membership" does not present the situation where the government "appropriates private property for its own use." <u>Eastern Entprs. v. Apfel</u>, 524 U.S. 498, 522 (1998), nor does it fall into the category of a "regulatory taking." <u>Connolly v. Pension Ben. Guar. Corp.</u>, 475 U.S. 211, 224-25 (1986) (analyzing "taking" of contracts rights under regulatory takings jurisprudence).

---

[7] Plaintiff cites generally to <u>Burton v. Wilmington Parking Auth.</u>, 365 U.S. 715 (1961) which was an "equal protection" racial discrimination case involving injunctive relief. There, a publicly-owned facility was leased to an operator who was discriminating against customers on the basis of race. Such fact pattern is readily distinguishable from, and not relevant to, the present case.

Any dispute over rights that plaintiff may have in an alleged "life membership" in a private golf club is essentially a matter of contract for which he has adequate remedies under state law. Indeed, the record reflects that he has already conclusively litigated the terms and existence of his "life membership" in state court (doc. no. 19, Exs. A-C).[8] Even assuming the existence of his alleged "life membership" for purposes of Rule 12(b)(6), plaintiff may not transform a cause of action for breach of contract against a privately-owned golf club into a § 1983 claim merely because police investigated potentially criminal behavior in an incident involving plaintiff or enforced laws against trespassing on private property. In his response, plaintiff appears to recognize this by arguing that "[b]y barring Wessendarp from playing golf at Beckett, his life membership was rendered worthless and was a breach of contract" (doc. no. 18 at 2). Plaintiff's complaint states no plausible § 1983 claim against Beckett.

### 2. Claim One: *against the West Chester Defendants*

As for the West Chester defendants, plaintiff alleges the police officers "interfered" with his alleged "property rights in his life membership at Beckett" (¶ 31). Although plaintiff vaguely asserts that he has a right to what he describes as "freedom from unlawful interference by police," the officers obviously have the authority to investigate a report of potentially criminal behavior at the golf club

---

[8] Beckett denies that plaintiff has a valid life membership (doc. no. 19 at 5) and points to the dismissal with prejudice of his second state case on August 27, 2010 (doc. no. 19-3, Ex. C). See <u>Ky. Dept. of Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989) ("an individual claiming a protected interest must have a legitimate claim of entitlement to it").

and to enforce the state's laws, including the law against trespass, regardless of the existence of any purported "life membership." Plaintiff cites no authority suggesting otherwise.

Moreover, the defendants assert that the police officers in their individual capacity would be entitled to qualified immunity. The United States Supreme Court has explained:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. The Supreme Court emphasized that "we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." Id. at 232 (quoting Anderson v. Creighton, 483 U.S. 635, 640, n. 2 (1987)). "[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)) (per curiam); see also, Langdon v. Skelding, 2013 WL 1662961, *6 (6th Cir. (Mich.)) (affirming dismissal because plaintiff failed

to state viable substantive or procedural due process claims and defendants were entitled to qualified immunity).

In determining whether the officers are entitled qualified immunity, the Court must ask "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated" and "whether that right was clearly established." Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008). The contours of the right must be sufficiently clear to inform a reasonable official that his conduct violates that right, but a prior ruling holding the precise action unlawful is not required. Anderson, 483 U.S. at 640 ("in light of pre-existing law the unlawfulness must be apparent"). The West Chester defendants point out that the complaint does not identify any constitutional right that was purportedly violated, much less that any such right was "clearly established." In his response, plaintiff vaguely refers to a purported 'liberty and property interest" in his alleged life membership at the golf club.

The Due Process Clause guarantees "substantive due process, which is the right to be free from government infringement against certain liberties such as personal security regardless of the process used, as well as procedural due process, which is the right to a fair procedure when the government deprives a person of protected liberties." Langdon, 2013 WL 1662961 at *3; EJS Props., LLC v. Toledo, 698 F.3d 845, 855 (6th Cir. 2012), cert. denied, 133 S.Ct. 1635 (2013). The Due Process Clause has a substantive component that guarantees "protection of the individual against arbitrary action of government." Jones v. Byrnes, 585 F.3d 971, 976 (6th Cir. 2009) (defendant's alleged conduct must be so arbitrary as to

"shock the conscious") (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998)); Draw v. City of Lincoln Park, 491 F.3d 550, 556 (6th Cir. 2007). To the extent plaintiff is asserting a substantive due process claim, the alleged police conduct did not amount to arbitrary conduct that would "shock the conscious."

The facts alleged in the complaint do not amount to a constitutional violation, but even supposing that plaintiff had pleaded some sort of due process violation, plaintiff has pointed to nothing that would suggest the police officers exceeded the bounds of their professional duties. They were carrying out their duties and investigating potentially criminal behavior in the July 21, 2010 incident and, according to plaintiff, told him to "stay away" from the golf club. While the general constitutional guarantee of due process is clearly established, it was not clearly established that the officers' instruction to stay away from the golf club (i.e., to not trespass at a private premises) violated any "statutory or constitutional rights of which a reasonable person would have known." Pearson, 555 U.S. at 231; Saucier v. Katz, 533 U.S. 194, 201 (2001) (explaining that the "clearly established" prong must be applied "in light of the specific context of the case, not as a broad general proposition"); Hagans v. Franklin Cty. Sheriff, 695 F.3d 505, 5509 (6th Cir. 2012), rehrg. and rehrg. en banc denied (the right must be "defined at the appropriate level of generality – a reasonably particularized one"). Even supposing that the complaint could be construed as alleging a due process violation, the police officers are fully entitled to qualified immunity.

On last point bear mentioning. To the extent plaintiff insists that he has a life membership (and thus was not "trespassing"), the doctrine of "qualified

immunity allows for reasonable mistakes by law enforcement officials." <u>Hensley</u> <u>v. Gassman</u>, 693 F.3d 681, 694 6th Cir. 2012); see also, <u>Dunigan v. Noble</u>, 390 F.3d 486, 491 (6th Cir. 2004) ("Implicit in the qualified immunity doctrine is a recognition that police officers, acting reasonably, may err."). Given that Beckett denies that plaintiff has a life membership, the police acted reasonably in telling plaintiff not to "trespass" there. The parties have previously litigated the terms and existence of the alleged "life membership," and upon their' "Stipulation of Dismissal," the state court dismissed the case. If plaintiff believes the golf club is not adhering to terms of the consent judgment, he may apply to the state court to enforce its terms. His present claim that the police, while investigating a report of potentially criminal behavior and in enforcing the law against trespass, somehow violated plaintiff's due process rights is without merit. Even assuming that plaintiff has a life membership and that the police erred, the police are fully entitled to qualified immunity. Claim One may not proceed.

### 3. Claim Two: "Failure to Train" *against the Township*

To the extent plaintiff alleges that he is suing the officers in their official capacities, a suit against a government employee in "official capacity" is essentially a suit against the government entity itself.  It is well-settled that a § 1983 action brought against a governmental entity cannot be maintained on a theory of respondeat superior. <u>Monell v. NY Dept. of Soc. Servs.</u>, 436 U.S. 658, 690-691 (1978). When a complaint fails to state a valid constitutional claim against the individual capacity defendants, there is no basis for holding the municipality liable under § 1983. <u>Moore v. City of Wynnewood</u>, 57 F.3d 924, 931 (6th Cir. 1995);

<u>Scott v. Clay Cty.</u>, 205 F.3d 867, 879 (6th Cir. 2000) (the "conclusion that no officer defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well"), rehrg. and suggestion for rehrg. en banc denied; <u>Bukowski v. City of Akron</u>, 326 F.3d 702, 708 (6th Cir. 2003) (same).

 "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." <u>Monell</u>, 436 U.S. at 690-691. The official policy must be "the moving force of the constitutional violation" to establish governmental liability under § 1983. <u>Id</u>. Where a failure to train is the result of a municipality's policy or custom and results in a constitutional violation by its officers, a city can be held liable under § 1983. <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989). A single incident alleged in a complaint, especially if it involved only actors below the policy-making level, generally does not suffice to show a municipal policy. <u>Pembauer v. City of Cincinnati</u>, 475 U.S. 469, 481 (1986).

 The Township's liability "depends solely on whether the plaintiff's constitutional rights have been violated as a result of a policy or custom attributable to the county or local government." <u>Holloway v. Brush</u>, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Plaintiff must identify an offending policy, practice or procedure for which the municipality is responsible. <u>Pembauer</u>, 475 U.S. at 479-481. "Official policy often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over

time." <u>Spears v. City of Cleveland</u>, 589 F.3d 249, 256 (6th Cir. 2009) (quoting <u>Pembaur</u>, 475 U.S. at 480–81).

Plaintiff has failed to allege a plausible § 1983 claim against the Township. Plaintiff merely makes the generalized and conclusory allegation that the Township "failed to train" its officers in the "proper use of the police powers" and the applicable state and federal law (doc. no. 1 at 7, ¶¶ 4-5). Plaintiff also claims in conclusory fashion that his "treatment" was an "abuse of authority" and was "consistent with the institutionalized practice of the West Chester Township Police" (¶¶ 2, 7). He does not specify what those purported "institutionalized practices" might be. Plaintiff has not pointed to any specific policy or practice that led to the alleged violation of his constitutional rights. Plaintiff's conclusory allegations fail to allege any basis for Township liability. See, e.g., <u>Buster v. City of Cleveland</u>, 2010 WL 330261, *9 (N.D.Ohio) (dismissing *Monell* claim which only "tender[ed] naked assertions devoid of further factual enhancement"); <u>Williams v. City of Cleveland</u>, 2009 WL 2151778, *2 (N.D.Ohio 2009) (dismissing *Monell* claim pursuant to Rule 12(b)(6) because the complaint merely recited the elements of a § 1983 claim against a municipality in a conclusory manner).

### F. Claim Five: State Claim for Negligent Personal Injury

Finally, when a district court dismisses all of the pending federal claims, it will generally decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>Brooks v. Rothe</u>, 577 F.3d 701, 709 (6th Cir. 2009). As the federal claims are subject to dismissal, and as this case is before this Court only

on federal question jurisdiction, the Court will decline supplemental jurisdiction over the remaining state claim.

## IV.  Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have fully briefed the motions. The Court finds that the pleadings and exhibits are clear on their face and that oral argument is not warranted. Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs, 975 F.2d 300, 301-02 (6th Cir. 1992); Schentur v. U.S., 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the Court will GRANT both "Motions to Dismiss" (doc. nos. 9, 15); Claims One, Two, Three, Four, and Six are DISMISSED with prejudice, with costs to plaintiff. The Court declines supplemental jurisdiction over Claim Five and any other remaining state claims, which are dismissed without prejudice. This case is TERMINATED from the docket of this Court.

IT IS SO ORDERED.

    s/Herman J. Weber

Herman J. Weber, Senior Judge

United States District Court